**Darlene A. BRAZZELL, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 88–2829.**

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1989.

Decided July 21, 1989.

Dwight G. Rabuse, Washington, D.C., for appellant.

Wilford Forder, for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and DUMBAULD,* Senior District Judge.

McMILLIAN, Circuit Judge.

The United States appeals from a final judgment entered in the United States District Court for the Northern District of Iowa in favor of appellee, Darlene Brazzell, in her product liability suit brought under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. (1988 & Supp.1989) (FTCA), and the National Swine Flu Immunization Program Act, former 42 U.S.C. § 247b(j)—(l) (1976) (Swine Flu Act).[1] Judgment was entered for Brazzell in the amount of $33,482.95 plus interest and costs. For reversal, the United States argues that the district court erred in ruling that (1) under Iowa law, the United States may be held strictly liable for failure to warn of unforeseen risks associated with the swine flu vaccine and (2) Brazzell did not carry the burden of proving that the alleged lack of adequate warning concerning the swine flu vaccine was the proxi-

mate cause of her injuries. For the reasons discussed below, we reverse the judgment of the district court and remand this case with directions to enter judgment in favor of the United States.

On November 11, 1976, Brazzell, in response to an extensive media campaign conducted by the United States Department of Health, Education and Welfare, received a bi-valent swine flu immunization vaccination. Before receiving the vaccination, Brazzell was given a form listing possible side effects of the swine flu vaccine. The listed side effects included fever, chills, headache, or muscle ache within the first forty-eight hours after receiving the vaccination.

After receiving the vaccination, Brazzell experienced muscle soreness throughout her body. She was subsequently hospitalized for this condition which was diagnosed by her doctor as myalgia. Because of the unusually long duration of the myalgia suffered by Brazzell, she developed emotional problems and sought psychiatric treatment. Brazzell was under the care of a psychiatrist for over four years. These injuries, the prolonged myalgia and Brazzell's emotional response to it, form the bases for Brazzell's personal injury claim against the United States.

This case is before us for the second time. In Brazzell v. United States, 788 F.2d 1352 (8th Cir.1986) (Brazzell II) (vacated and remanded by order entered July 31, 1986), we affirmed the original judgment in favor of Brazzell entered by the district court and reported in Brazzell v. United States, 633 F.Supp. 62 (N.D.Iowa 1985) (Brazzell I). Relying on our interpretation of Iowa law in Petty v. United States, 740 F.2d 1428 (8th Cir.1984), the district court held in Brazzell I that foreseeability is irrelevant in Iowa strict liability law. Brazzell I, 633 F.Supp. at 71. The district court has specifically found that Brazzell's injuries "were not reasonably foreseeable." Brazzell v. United States,

---

* The Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The Swine Flu Act expired by its own terms on August 1, 1977.

No. 80–4084, slip op. at 17 (N.D.Iowa Oct. 13, 1988) (*Brazzell III*). In *Brazzell II*, we held that the district court correctly predicted that Iowa courts would impute to vaccine manufacturers knowledge of all risks, whether or not they were foreseeable at the time of manufacture, under a theory of strict liability for failure to warn of unreasonably dangerous risks associated with their products. 788 F.2d at 1357–58.

We subsequently vacated our judgment in *Brazzell II* and remanded the case to the district court for reconsideration in light of *Moore v. Vanderloo*, 386 N.W.2d 108 (Iowa 1986) (*Vanderloo*), an Iowa Supreme Court case decided on April 16, 1986, two days before our decision in *Brazzell II.* We also ordered the district court to adjudicate Brazzell's alternative grounds for relief. *Brazzell II*, 788 F.2d at 1361.

Upon remand, the district court distinguished *Vanderloo* and held that its reasoning did not apply to the factual situation presented in the instant case. *Brazzell III*, slip op. at 15–16. We disagree and hold that *Vanderloo* squarely addresses the issues of duty and burden of proof presented by this case.

■ The statutory basis for Brazzell's claim against the United States, the Swine Flu Act, provided that personal injury and wrongful death claims arising out of the administration of the swine flu vaccine are to be asserted directly against the United States, utilizing the procedures of the FTCA. 42 U.S.C. § 247b(k)(1)(B). This provision was designed to ensure participation in the swine flu immunization program by vaccine manufacturers and distributors as well as health agencies and personnel. *Id.* The Swine Flu Act also provided that:

> [t]he liability of the United States arising out of the act or omission of a program participant may be based on any theory of liability that would govern an action against such program participant under the law of the place where the act or omission occurred, including negligence, strict liability in tort, and breach of warranty.

42 U.S.C. § 247b(k)(2)(A)(i).

Because Brazzell received her swine flu vaccination in Iowa, any claim she has for injuries arising out of that vaccination must be based on theories of liability under Iowa law. *See id.* Until *Vanderloo* was decided, there had been no "clear pronouncement on strict liability tort law from the Iowa Supreme Court." *Brazzell II*, 788 F.2d at 1357 n. 3. *Vanderloo* provides us with an explicit statement of Iowa strict liability law on the very issues upon which this case turns, whereas previously we could only attempt to predict how Iowa courts would rule on these issues.

The plaintiff in *Vanderloo*, Linda Moore, suffered a stroke after undergoing chiropractic manipulation of the neck. She was taking birth control pills at the time she suffered the stroke. Moore sued the manufacturer of the birth control pills, Ortho Pharmaceuticals, Inc. (Ortho), under a theory of strict liability, alleging that Ortho had breached its duty to warn chiropractors of the risks of taking birth control pills and receiving chiropractic manipulation. Moore's stroke occurred in 1978, two or three years before chiropractic literature suggested that such risks exist.

In affirming judgment entered in favor of Ortho, the Iowa Supreme Court stated the following:

> The adequacy of a warning ... must be judged in light of what was generally known at the time plaintiff was taking the oral contraceptives and received the manipulation in question from Dr. Vanderloo. We conclude, therefore, that the manufacturer Ortho had no duty to warn when it did not know or should not have known of the danger. *The contention that plaintiffs urge would impose a duty on a manufacturer to warn of unknown dangers, and we do not adopt such a requirement.*

*Vanderloo*, 386 N.W.2d at 116 (citations omitted) (emphasis added). Thus, the Iowa Supreme Court has stated in very explicit terms that a manufacturer has no duty to

warn of unforeseeable risks associated with its product.

The district court distinguished *Vanderloo* on its facts from the instant case, holding that "the nature of the product and the means by which it was sold to the plaintiff in this case distinguish the United States Government from the manufacturer in [*Vanderloo*]." *Brazzell III*, slip op. at 13. The specific factual distinctions relied upon by the district court were that Brazzell was vaccinated in a mass immunization program which was promoted by the United States government in a "hard-sell" media campaign. *Id.* at 9. The district court emphasized that, in its effort to vaccinate every adult citizen against swine flu, the United States government downplayed the risks involved in receiving the vaccine. *Id.* The district court reasoned that the "Iowa Supreme Court would impose a higher degree [of duty] on a manufacturer who would be in a position of hard-selling the product, than it would on manufacturers generally." *Id.* at 12. Because of the above factors, the district court believed that Brazzell was not voluntarily assuming some risk in purchasing a product as was the case in *Vanderloo*. *Id.*

While we understand the basis of the district court's distinction between *Vanderloo* and the present case, we do not agree that the distinction is sound. The district court correctly notes that one of the public policies behind imposing strict liability upon the manufacturers of defective products is to ensure that manufacturers "will take the necessary precautions to fully investigate and protect the consumer so as to minimize the risks." *Id.* The Iowa Supreme Court apparently does not believe that this policy will be fulfilled by imputing knowledge of unforeseeable risks to manufacturers. A risk that is unforeseeable is unforeseeable whether or not the product with which it is associated is promoted by advertising and is administered en masse rather than on a more individualized basis. *Vanderloo* does not differentiate between two classes of plaintiffs, one that voluntarily assumes some risk in using a product and one that does not. The Iowa Supreme Court has spoken on this issue—manufac-

turers do not have a duty to warn of unforeseeable risks.

The district court also held that *Vanderloo* did not make a "clear pronouncement" that shifting the burden on the issue of proximate cause from the plaintiff to the defendant is an incorrect application of Iowa strict liability law. We disagree.

The Iowa Supreme Court held:

It is undisputed that plaintiffs had a burden of proving that the ingestion of the oral contraceptive was a proximate cause of plaintiff Linda Moore's injury. *Plaintiffs also had to show that the lack of adequate warning concerning the pill was the proximate cause of plaintiff Linda Moore's injury.*

*Vanderloo*, 386 N.W.2d at 117 (emphasis added). One could not ask for a clearer pronouncement on Iowa law in regard to the issue of who bears the burden of proving proximate cause in a failure to warn case.

The decision of the Iowa Supreme Court came at an inopportune time for Brazzell. However, despite her admittedly sympathetic claim, we are bound to uphold the law. The Swine Flu Act requires us to look to Iowa law in this case, and Iowa law as set forth in *Vanderloo* does not allow a cause of action for strict liability for failure to warn where the risk was unforeseeable.

Because the district court has ruled against Brazzell on her alternative claims for relief, there is no basis upon which she can recover damages for her injuries.

Accordingly, the judgment of the district court is reversed and this case is remanded with instructions to enter judgment in favor of the United States.